UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ERLIN A. MORENO-RUBIO,

      Petitioner,

    v.                             Case No.:  2:26-cv-00655-SPC-NPM

GARRETT RIPA *et al.*,

      Respondent,

_____/

## OPINION AND ORDER

Before the Court are petitioner Erlin A. Moreno-Rubio's Petition for Writ of Habeas Corpus (Doc. 1), the government's response (Doc. 7), and Moreno-Rubio's reply (Doc. 9).  For the below reasons, the Court grants the petition.

### A. Background

Moreno-Rubio is a native of Honduras who illegally entered the United States in 2010.  The government removed him to Honduras on October 13, 2010.  He re-entered the United States soon thereafter.  In 2020, Moreno-Rubio was arrested for domestic battery after an incident with his husband.  The charges were dropped, but Immigration and Customs Enforcement ("ICE") took custody of Moreno-Rubio and put him in withholding-only proceedings. On March 3, 2021, an immigration judge granted Moreno-Rubio's request for withholding of removal because of his history of persecution due to his sexual orientation.  ICE released him under an order of supervision on March 16,

2021, after 90 days in immigration detention. Moreno-Rubio has complied with all terms of the order, and he has work authorization through April 9, 2030.

On March 3, 2026, ICE arrested Moreno-Rubio in a targeted operation and revoked his release. He is currently detained at Alligator Alcatraz. Moreno-Rubio challenges the legality of his detention under the Fifth Amendment, *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Administrative Procedures Act, the Immigration and Nationality Act, and its implementing regulations.

### B. Jurisdiction

Before addressing the merits of Moreno-Rubio's claim, the Court must address its jurisdiction. The respondents argue two sections of the INA strip the Court of jurisdiction over this action. They first points to a provision that bars courts from hearing certain claims. It states:

> Except as provided in this section and notwithstanding any other provisions of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). This jurisdictional bar is narrow. "The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal

orders.'"  *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999); *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) ("We did not interpret this language to sweep in any claim that technically can be said to 'arise from' the three listed actions of the Attorney General.  Instead, we read the language to refer to just those three specific actions themselves."). "When asking if a claim is barred by § 1252(g), courts must focus on the action being challenged."  *Canal A Media Holding, LLC v. United States Citizenship and Immigration Servs.*, 964 F.3d 1250, 1258 (11th Cir. 2020).

The respondents also raise the INA's "zipper clause," which states:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.  Except as otherwise provided in this section, no court should have jurisdiction, by habeas corpus under section 2241 or title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such question of law or fact.

8 U.S.C. § 1252(b)(9).  The zipper clause only applies to claims requesting review of a removal order.  *See Madu v. U.S. Attorney Gen.*, 470 F.3d 1362, 1365 (11th Cir. 2006) (holding the INA did not divest the district court of jurisdiction over a § 2241 challenge to detention of the petitioner pending deportation).

Moreno-Rubio does not challenge the commencement of a proceeding, the adjudication of a case, or the execution of his removal order.  Nor does he ask the Court to review the removal order.  Rather, Moreno-Rubio challenges the legality of his detention under a framework devised by the Supreme Court for district courts to apply.  *See Zadvydas*, 533 U.S. at 682 (stating the Court's limitation on post-removal detention "is subject to federal-court review.").  A decision in Moreno-Rubio's favor would not impair ICE's ability to execute the removal order.  The INA does not strip the Court of jurisdiction over this action.

**C. Legality of Detention**

"Once a noncitizen's order of removal becomes administratively final, the Government 'shall' remove the person within 90 days."  *Singh v. U.S. Attorney Gen.*, 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(A)).  The government must detain the noncitizen during the 90-day removal period, which begins when the removal order becomes administratively final.  *Id.*  Detention may continue after the removal period, but not indefinitely.

In *Zadvydas*, the Supreme Court held, "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute."  533 U.S. at 700-01 (2001).  If removal is not practically attainable, detention no longer serves its statutory purpose of "assuring the alien's presence at the moment of removal."  *Id.* at 699.  The Court found it unlikely Congress "believed that all reasonably foreseeably

removals could be accomplished in [90 days]." *Id* at 701. So, "for the sake of uniform administration in the federal courts," it established a "presumptively reasonable period of detention" of six months—the 90-day removal period plus an additional 90 days. *Id.* Courts use a burden-shifting framework to judge the constitutionality of additional post-removal detention:

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut the showing.

*Id.*

The respondents argue Moreno-Rubio's petition is premature because his current detention has not exceeded 180 days. They assume the six-month presumptively reasonable period of detention resets each time a noncitizen is detained. That assumption is inconsistent with *Zadvydas*. It would effectively allow DHS to detain noncitizens indefinitely and avoid judicial scrutiny by releasing and re-detaining them every 180 days. As the Eleventh Circuit recognized, "[t]he Supreme Court's stated rationale for establishing a presumptively reasonable '6-month period' for detention pending removal supports our conclusion that this period commences at the beginning of the removal period." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 n.3 (11th Cir. 2002).

The respondents' concerns about the Court's understanding of *Zadvydas* are overblown.  It does not "effectively eliminate ICE's ability to ever remove an alien unless it does so within the presumptively reasonable timeframe." (Doc. 7 at 5).  The *Zadvydas* framework guards only against *indefinite* detention.  The government loses the presumption of reasonableness after the six-month period, but it can still show that detention is reasonable by meeting its burden of proof.  The government is wrong to suggest the burden shift requires a counterfactual "finding that ICE has been unconstitutionally detaining Moreno-Rubio since his OSUP release." (Doc. 7 at 8).  The *Zadvydas* framework is prospective, not retrospective.  If the government can establish a significant likelihood of removal in the reasonably foreseeable future, detention is lawful.  Otherwise, the government can keep tabs on the noncitizen through reasonable conditions of supervision while it continues removal efforts.  If removal becomes likely, the government can detain the noncitizen while it irons out the details.

Because the six-month period for presumptively reasonable detention has expired, *Zadvydas*'s burden-shifting framework applies.  Moreno-Rubio has carried his initial burden by showing a good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future.  The government cannot remove Moreno-Rubio to Honduras, and it has presented

no plan for removal to a third country.   The burden thus shifts to the respondents, but they make no attempt at rebuttal.

### D. Conclusion

The Court finds no significant likelihood Moreno-Rubio will be removed in the reasonably foreseeable future.   He is entitled to release from detention under *Zadvydas*.   If removal becomes likely in the reasonably foreseeable future, DHS can detain Moreno-Rubio to "assur[e] [his] presence at the moment of removal." *Zadvydas*, 533 U.S. at 680.

Accordingly, it is hereby **ORDERED:**

Erlin A. Moreno-Rubio Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED**.

1. The respondents shall release Moreno-Rubio within 24 hours of this Order, and they shall facilitate his transportation from the facility by notifying his counsel when and where he may be collected.

2. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close this case.

**DONE AND ORDERED** in Fort Myers, Florida on March 24, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies:  All Parties of Record